Thanks to all counsel, the case will be taken under advisement. And also I wish to thank counsel for the defendants, too, in taking these cases. Thank you very much. The second case this morning is Capps v. Drake. Good morning, your honors, and may it please the court. This case is about attorney's fees. Back in 1976, when Congress— Mr. Flaxman, forgive me, but I really need to clarify something before I begin. I want to clarify regarding the fee agreement between Ms. Redwood and Mr. Capps. There is no issue here as to enforcing that agreement, is there? As I understand, Ms. Redwood is not claiming an entitlement to a contingent fee. That's correct. You are simply arguing that it was error for Judge Reagan to deny a statutory fee award based in part on the problems he saw in the fee agreement. Am I on track? Yes, you're precisely on track. The entirety of the judgment, when it was paid by the defendants, went to satisfy the back child support lien that Mr. Capps had incurred and went to Mr. Capps. The costs that will or were recovered go to reimburse Ms. Redwood's litigation expenses. Mr. Capps, I think, paid $100 of the $5,000 he said he would pay. But there's no issue about seeking to enforce the contract. This is not one of those cases where there's a settlement, like a class action settlement where there's a settlement and the court awards fees and then the lawyer takes money from the named plaintiffs. That's not what happened here. That's clearly unethical and sanctionable and discipline, subject to discipline. That's not what happened here. All the money went to Mr. Capps. In addition to disagreeing with Chief Judge Reagan's conclusion that because of these perceived ethical violations, Ms. Redwood should not receive any fee at all, we take issue with the fact that this case was referred to Chief Judge Reagan. It's a mystery how this happened. There's no statute that allows one district judge to refer a motion to another district judge. No, but there's inherent authority. Well, there's inherent authority when there's a necessity to take particular action. Necessity? You think you come and argue that there had to be necessity to do it? There was no necessity. Judge Reagan— You argue it has to be a necessity. Yes, that's correct. That's the sine qua non, if I pronounced that correctly, for inherent authority. If there's no necessity, you can't— But as a matter of logic, why would it not be within a district judge's authority to refer a particular matter to another judge? Of course, you know, in the Northern District of Illinois, we have a— The general view is that federal judges in the district court and on this court are generalists in that you can't pick, and the court can't pick, and the defendants can't pick, and we're not saying they did, which judge particular matters go to. It would have been very simple for Congress to say, if we get an expert in medical malpractice sitting as a district judge, all medical malpractice cases should go to that district judge. If we get an expert in police matters, all police cases should go to a district judge. We get a judge who's an expert in antitrust matters, every antitrust case should go to that judge. That isn't the way our system works. We rely on random assignment. Mr. Flaxman, there was no objection to this referral in the district court, was there? That's correct. You've argued no objection was needed on the theory that this is jurisdictional. That's also correct. I think you've also, though, acknowledged that the chief judge, or at least that, for example, a motion for recusal could be referred to another judge. That's a necessity. Why would that not be similar jurisdictional problem? It's not a necessity. I can decide my own recusal motion. Well, if you feel that it would not serve the appearance of justice to decide on a recusal motion, you should not sit on that. You should refer it to another judge. That's necessity. In this case, there was no necessity. It was for some reason. Judge Reagan thought that he had particular expertise in attorney fee matters, in police misconduct matters, and in settling cases, and that's why he should decide the case. There's no rule. I'll tell you, I share some of those concerns. I'm not sure how rigidly rule-bound the practice is, but you've raised a serious concern. Well, if the court doesn't want to adopt that, we can just caution district judges to have a rule before they transfer motions from one to another, like in the Northern District. If I could ask you... Wait a minute. Like in the Northern District, because the Northern District has a rule? The Northern District has an express rule... I mean, they didn't say they didn't, but that doesn't mean the Northern District of Indiana needs one, or the Southern District of Illinois needs one. Our position is that without an express rule, one judge cannot transfer, lacks the power to transfer a pending motion to another judge, absent necessity, as there would be in a recusal motion, or as there would be if a judge became ill and wasn't sitting for two years while he or she was recovering. Then it would be, the whole case would be transferred to the other judge, and the judge could decide it. You're taking on a substantial aspect of the federal judiciary with regard to the ability to do things that aren't particularly written as rules or orders. If somebody had been able to cite a case other than this case where one judge had referred a motion to another judge because of that judge's particular expertise in that matter, we would not be raising that argument. How about judges referring settlement discussions to magistrates? Well, first magistrates are pursuant to statute, and referring settlement negotiations... No, no, no. That's not... Talking about referral doesn't make any difference. Well, but referring settlement discussions is different than deciding a contested motion. And when, in this case, when the matters were referred to a magistrate, the magistrate insisted on having ex parte communications. And when plaintiff's lawyer objected to that, everybody, including Chief Judge Reagan, said you can't object to ex parte communications. That's the way things work in the Southern District. There was some... I honestly don't know why you think it's ex parte for a judge to call one side in and then another side in. I mean, that's what settlements are. But that's not permissible unless there's consent of the party to engage in ex parte communications. That's in the Code of Judicial Responsibility. I wish you would call it something else. I think that when we talk to one side and you call up the attorney and you say, no, you should settle, you're going to lose a trial, the judge is going to rule against you on fees, you're being stupid... I don't think he said that sort of thing. I think he said, come on in for a settlement conference. That's not what the evidence... I have not heard of a federal judge since our beloved Abe Marovitz ever saying, you better come in or else. Well, I don't want to share my stories with the court, but I want to get back to the other question that assuming that Judge Reagan had jurisdiction to decide the fee motion, he committed... He shouldn't have said no fees. Okay. Can I ask you just a few things about that point, Mr. Flaxman? Let's focus on where the money is. I was troubled by Ms. Redwood's request for a multiplier in the original fee. Whether that justifies a complete denial is another question, but where on earth was that coming from? It came from cases that were overruled and she learned about those and withdrew the multiplier request in advance of the hearing, also withdrew a request for expert expenses in advance of the hearing. She realized that she was wrong and didn't press that. She said, I'm withdrawing that. It also took a while during that hearing for her to withdraw the request for 40% of the damages, right? No, no. I think that's misreading the hearing. She never walked through the 40%. She always agreed that that goes... If she took the 40%, she couldn't satisfy the lien. The lien was for 20 something dollars, $20,000. Let me back up a little bit because in this kind of a case, there's a huge risk for the plaintiff to basically judge by hindsight, particularly in evaluating these fee agreements that have to be entered into up front. I'd like to get your perspective, if I could, on how one deals with the uncertainty. I kind of categorized it. You have cases that are going to end successfully for a plaintiff early, without a whole lot of hours in them, and that take years with lots and lots of hours, right? Yes. You do this for a living. You know how to deal with these kinds of problems. I'd like you to just explain these problems to us, how you protect yourself and your client in those situations in which there could be a quick settlement for a lot of money and very little fee, very little lawyer time. There can be very little money and a lot of lawyer time, or maybe a lot of both or very little of both. How do you do that? The way some lawyers deal with that is to say, we're only going to take civil rights cases where there's death or catastrophic injury. We're not going to take a case like Mr. Capp's case, because we can't make any money on that. We've got to find a solution for cases like this, though. There is no solution, because what happens, and I see this every day, is we do work, we spend money, we're getting ready for trial, we have $50,000 in time. The defendants offer $15,000 to settle everything, including fees, and the client says, I want to settle. And we say, you know, I think you get more, but we'll eat our fees. We're not going to, we'll take the hit in this case, because we'll make it up in another case, or we're factoring the risk of loss and wasting more time doing the case. But in this case, there wasn't the settlement offer that the client wanted to take. Mr. Capp said, I want vindication. I want the jury to tell these cops they were wrong to tase me, they were wrong to stand by. I want a judgment against them, and I want them to pay out of their own pocket, which he achieved, to some degree, with the punitive damage award. The defendants, if they really wanted to cap their fee exposure, could have made an offer of judgment under Rule 68, which, 14 days before trial, which they never did in this case. I mean, the reality is that what Congress, what some people thought Congress intended back in 1976 with the Fee Act, hasn't really come to fruition. Let me ask this a little more directly. Does the combination of a right to a statutory fee, as well as an agreement with a contingent fee in it, if the lawyer's willing to back off of that contingent fee in the event of a lot of hours and a statutory award, doesn't that deal with the uncertainty up front? Only in the cases that involve death or catastrophic injury. If I have a case where there's $3,700 in special injuries, we're not going to get a lot of money from the jury, especially, as Chief Judge Reagan said, what juries like cops, especially in federal court, especially outside of, even more so out of the Northern District than in the Northern District. The police help people who sit on juries. They don't sop and frisk and harass and beat them up. So it's a very difficult business to be in, to try to do civil rights cases, especially like Ms. Redwood does, where she's willing to take a modest case that nobody else would take and take it to trial and spend money in motels in East St. Louis that the judge says, well, you can't get because, I don't know, you should have slept in your car. I don't know what he said, but he would not give her the compensation for the hotel room. I'm running out of time, but I don't want to cut off questioning, so thank you. Thank you. Ms. Unger? May it please the court. Assistant Attorney General Sarah Unger on behalf of the state defendants. The district court here did not abuse its discretion. In terms of the referral to Judge Reagan, was this an appropriate action for the district court to take, given that it was a fee petition for a matter that Judge Reagan had not presided over? Just as a matter of prudence, a matter of logic, should the fee request be decided by the judge who presided over the matter, rather than a judge who is a complete stranger to the litigation? In the ordinary course, yes, of course, we would want the same judge to preside over both, but that does not mean that it's an abuse of discretion to use the judge's inherent authority to refer the fee petition where the judge thought that was necessary. And I would also note here that Chief Judge Reagan held an extensive hearing on the matter. He also read, as you said in the hearing, the record. He read the entirety of the fee petition, and he allowed counsel from both sides to speak on it. And at the time of the referral, no one objected to it. You know, they explained . . . Well, that I . . . but, you know, what I think is one of the bulwarks of the federal system is the random assignment of judges. I think it's very important. And in referring a particular type of motion to a judge who has a professed interest in the subject matter, do you really think that's consistent with the random assignment of judges? Well, I would note that Section 137, which the plaintiffs do cite in their reply brief, states that, you know, there is the random assignment of cases, but where there is an assignment that goes outside of the normal course, the normal initial assignment of cases, that does fall to the chief judge. And here it was Chief Judge Reagan who assigned those matters. And you see that, you know, if you look at the Southern District of Illinois' website, you know, there are administrative orders whereby certain cases are reassigned to different judges. Here, however, you know, it was a referral, and Judge Rosenstengel, in her inherent authority, referred it to Chief Judge Reagan, and no one objected at the time. And I think that's very important because everything was out in the open during the hearing. Chief Judge Reagan stated that he had the interest in the attorney's fees at the hearing. He also stated, you know, if we're looking at what he did in a more charitable angle, he then went on to explain that he's also had Section 1983 cases, excessive force cases. So one could look at that and saying that, you know, he was establishing that he had the expertise necessary. So has any other district judge who's sat on the bench for more than a few months? Yes, they have. But that was part of the same discussion that Chief Judge Reagan was having. And that was said at the hearing. And Ms. Redwood was the first attorney to get up after that, and she did not object. She did not file a motion after the hearing. And I think that's very important here. You know, in the ordinary course, of course we would want the same judge to preside over the trial and the attorney's fees and not have these referrals. What's extraordinary about this case? Judge Rosenstengel did not say on the record. You say in the ordinary, you know, what's extraordinary? Judge Rosenstengel did not state it on the record why she referred the case to Judge Reagan. We have Judge Reagan's perspective, as he said at the hearing, but unfortunately we just do not know. And I know as much as the panel knows here about why Judge Rosenstengel elected to do that. It's simply not in the record. I would note though that in the Robinson case, that was also a situation where the fee petition was heard by a different judge, then the judge overseeing the trial. And that was affirmed by this court. So it's not unprecedented to do that, even if it is not, you know, in the ordinary course. Now let me ask you one more question. Was this case really a five-figure case, as Judge Reagan said it was? You know, when he was considering the fees to which Mr. Capps potentially would be entitled in the if-any prevail? Even Judge Reagan thought that $215,000 added to a reasonable fee award. That makes it a six-figure case and a pretty hefty one, doesn't it? Well, I think he was, when he said the five-figure case, I think he was talking about the jury verdict not inclusive of the attorney's fees. Of course, if an attorney goes all the way through trial, they are going to have a significant amount of fees. But that's separate from what the case is valued at in terms of what the client will get. And here it was only $3,700 in terms of the medical bills and other special damages. So in order to get it up to a six-figure or, you know, as she asked for, $3.6 million, that would be a substantial amount of punitive damages that would have to be assessed. And I think it was not an abuse of discretion for Judge Reagan to conclude that that was an overvaluation of the case. Well, how about the $200,000 offer just before trial, which was not a Rule 68 offer, would not have involved any admission or finding of liability, right? That's correct. So that $200,000 offer was actually less than what turned out to be the value of the case, right? It was more than the jury verdict. No, but it was much less than the jury verdict plus reasonable fees up to that time. I would say that it was comparable. And without an admission. I would say that it was comparable. If you have $200,000 compared to the $215,000 plus $32,000, you're in the same ballpark. I mean, it wasn't as though it was, you know, a $60,000 offer. You're talking about $200,000 versus about $250,000. Yes. But the offer was less and did not involve any admission of liability, which was obviously very important to Mr. Capps here, right? It was. It is a distinct question, though. You know, of course the plaintiff has the right to go to trial. It is a separate question, though, whether the attorney should be paid for that time Really? under the reasonable fees. Really? Yes. Okay. When the last offer before trial is not a Rule 68 offer and is less valuable than the result of the trial. Yes. If you look at the Moriarty case, it says that substantial settlement offers prior to trial, even if they are not Rule 68 offers, can cut off fees in the context of the rest of the case. And what's the authority for doing that? The authority for doing that is that it would have been more to the plaintiff's benefit. And here that would have borne out. Because if he had accepted the $200,000 settlement offer, the contingent fee agreement would have kicked in. Maybe, maybe not. Who knows? If that had been accepted, we don't know how that money would have been split up, do we? Well, I think because we have the fee agreement in the record, we do. In their reply brief, they say that Ms. Redwood would have asked for that entire $200,000 for herself, which I think is improper. What you're describing is the typical defendant's attempt to drive a wedge between plaintiff and their counsel. Okay? It's available. The structure allows you to do it, but the system also has to have defenses in place against it. And one of the defenses is in the way that those kinds of offers wind up being handled, where the lawyer has a right at that point to assert a right to statutory fees or, maybe sometimes both, but rarely, but statutory fees or the contingency fee. But I'll tell you, you've got Rule 68 as a powerful tool. If you're willing to admit liability, and I don't see why you should get the benefit of that without actually going through the process. Well, this court has held that it is available in the Moriarty decision. It may be relevant, but there are other lines of cases that call that reasoning into question. And we've got to make this system work the way it was intended to work. Well, I think those other lines of cases show that if you have an offer that does not satisfy the Rule 68 provisions, that it doesn't necessarily cut off fees. So it's actually, I think, consistent, the Moriarty case with, for example, the Cole case. I would also note, though, that there was a post-trial offer of $300,000, which... This is the first I've heard of that. Did I miss that? First time. First time? It is in the record, and we did cite to it. Where is it in your brief? Pull it out. Here it is. It is on page 11 of our brief, right above the referral to Chief Judge Reagan. There's a Rule 68 offer of judgment that was not accepted in August of 2016. Sorry. And it was for $300,000. This is after trial? That is after trial, so it would have also included... It was under Rule 68C, is how it was made. Is the number 300,000 anywhere in your brief? I must have missed it. No, the number is not, but the fact that there was an offer of judgment following trial... How is this a 68C offer after the verdict has come in? Because the liability was not fully established with respect to the attorney's fees. That's how it was understood below. That's a new one on me. That is how the offer was made below, and in any event, it was an offer with the admission of liability. Can you direct us to case law that treats this as a way of dealing with attorney's fees after a verdict for liability and damages? I cannot. I can just say that it was made following trial, and even if it's not construed as a Rule 68 offer, the admission of liability would have been included in it. So it had all the components of a Rule 68C, even if technically it was just an offer. Ms. Hunger, I'm sorry, but this one sentence about a Rule 68 offer of judgment that was not accepted, that may or may not have qualified as a Rule 68 offer with no amount, how are we supposed to give that any weight at all? Well, we did not, I think, I believe it's also referenced later when we're talking about all the settlement offers that were going back and forth. The district court did say that it did not consider it in its decision, which is why we did not focus. Maybe we shouldn't either. We did not focus on it, but it was there since we were talking about the $200,000. I wanted to make you aware of that as well. Okay, thank you, but that may well turn out to look like a bargain on remand. We'll see. Judge Reagan and Burke juries are reluctant to find police officers liable, right? That is what Chief Judge Reagan found, yes. Doesn't that statement tend to show that the verdict here, however modest it may be, was a significant victory? It's a victory. It is a victory, and we are not disputing that CAPS is a prevailing party here. What we are saying, though, is when you look at it in comparison to the $3.6 million demand, and when you look at the fact that she submitted an $800,000 fee petition, you have to take all of this into account. I would also like to clarify a little bit about the contingent fee award and what the case law says about it. The Supreme Court has certainly held that it is acceptable for attorneys to enter into contingent fee agreements in civil rights cases because you do not know how the case will unfold, as Your Honors were discussing earlier. I would note, though, that in the Supreme Court case, Venegas, there was a mechanism by which attorneys can protect themselves and also have both fees. There was a provision in that fee agreement whereby anything recovered under the statutory fee would count dollar for dollar against the contingent fee, so that is one example of it. There is another way of doing it, which would be that if a certain amount of fees have been awarded, then the attorney is not going to seek the 40 percent, so we are not arguing that that would not have been available to Ms. Redwood. Instead, the district judge here used it as one data point in kind of this broader scheme of how the case was litigated and how Ms. Redwood placed her pecuniary interests above those of her client. I had trouble with it. I didn't see evidence for that, particularly since Mr. Harris, or Mr. Capps, rather, didn't want to settle.  In his affidavit, he also said that one of the reasons he didn't want to settle was because he wanted to get fees for Ms. Redwood, but he had also entered into the contingent fee agreement, which would have covered her and protected her as well, so a plaintiff is entitled to hold those views, but that's not relevant to the Section 1988 reasonable fee analysis, whether the plaintiff wanted his attorney to get paid well. That's a different question. It's a different question. The question is, Judge Reagan seemed to think that there had been a breach of loyalty by Ms. Redwood. He did. And that's where I don't see evidence. I think he also held, though, that her pecuniary interests were placed higher than those of Mr. Capps, and I think he looked at the settlement offers as one example of those. I think he also looked at all of the motions that she filed, which did not help his case out. The overvaluation of the case and all of that. I understand that. But the accusation that a lawyer has placed her pecuniary interests above her clients is a serious one. It is, yes. And I don't see the evidence for it. All of those things that I just listed were what he found, and that is what we have in the record. Those are reasons to criticize a lawyer, to reduce a fee award. It's very hard for me to see how this kind of significant victory would warrant no award at all. So he did make five distinct, he gave five distinct reasons for it, all of which are supported by case law. The state is not commenting, has no position on the letter that he filed, of course. That is a separate issue from us. But with respect to whether or not fees are warranted, he did make numerous factual findings which were based upon decisions of this court and the Supreme Court. And for that reason, the abuse of discretion standard does kick in. Simply because this panel might not have resolved it in the same way that he did, there was no clear legal error or any clear errors of fact. He held an extensive hearing. He did ask Ms. Redwood about her fee agreement. She did not contest that any of those provisions, as she does now on appeal, operated in the way that Chief Judge Reagan assumed they operated. He also stated, with respect to the referral, his special interest, no objection there. And I think that is within the district court's discretion, who held the hearing, who looked at all the facts to make these factual findings, and also apply, you know, you have the Brown case, the Voca case, Cole, Moriarty, Venegas, Blanchard, Pickett, Elusa, I mean, all of these cases support what he did, even though it is, of course, an extraordinary thing to do. It's an extraordinary result. It is. Given the district court's discretion, we argue that there's no basis for reversal. And if the court disagrees, you know, we would ask, you know, if the court disagrees with respect to the remand, we would ask that it go to Judge Rosenstengel and ask her to put her reasons on the record if the court finds that necessary, although we do believe that that was within her inherent authority to do so, and that would not be necessary. Now, let me just get something straight. Do you agree that the pretrial settlement offers were inclusive of fees? Yes. The offers, as I read them, would have included attorneys' fees and costs, yes. But to the extent that the settlement offers included fees, Mr. Kapp's decision to reject them doesn't look so unreasonable, does it? Well, I mean, the district court did enter an award of zero fees. You know, we keep bringing up the alternative fee ruling. That's circular logic. Yeah. He awarded no fees on the theory that it was unreasonable to refuse the pretrial settlement offers, which were much less than the verdict plus a reasonable fee. It was. The ultimate award that Mr. Kapp got, the $32,000 and no fees, was less, and then if you look at the combined amount, it was in the ballpark of the $200,000 and the $300,000. It was less. It was less. Same order of magnitude, but not as good as the trial result should have been. But this court's cases say that it just has to be comparable. It does not say that it has to be more. Of course, it is stronger evidence if the settlement offer is more, but... There's also a very serious risk of, if turning down a settlement offer before trial is a basis for denying fees altogether, then when you prevail, then there's a very serious risk of undermining an already fragile system for civil rights enforcement. There are. The district court did base it on this court's decisions. This was not something that was taken from nowhere. He did base it on several of this court's decisions, which are binding on the district court, and he did act within his discretion. I see my time has expired, so if there are no further questions, we ask that this court affirm the judgment of the district court. Thank you. I just want to comment about the reality of the way these things work in the world. In fee agreements, some lawyers say, I want a third of the recovery, other lawyers say I want 40% of the recovery. All lawyers who deal with civil rights cases say, you agree to assign to me any attorney's award that's made by the court. You agree not to settle that on your own, as the Supreme Court said you can do. Some lawyers say, anything that's awarded in fees is a credit towards the percentage of the recovery you agreed to pay me. Other lawyers say, I want that over the 40% that you agreed to pay me. That was what was before the court in Illustra, E-L-U-S-D-R-A, where the court seemed to approve that. There's a disagreement in the community about what's right and what's fair. This is also the first time that anybody's seen a post-trial Rule 68 motion, which according to the rule, has to be made 14 days before trial. Thank you. Thank you, counsel. Thank you both, counsel, and the case will be taken under advisement. Judge Rovner, are you ready for your 10-minute recess? The court will be in recess for 10 minutes.